UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------x

EMILY WU, RONGQIANG CHEN, SI WEI
CHEN, XU BEN KUN, GEORGE CHAN,
BENJAMIN CHAN, and SUET MAN
CHAN, *individually and on behalf of those
similarly situated*,

               Plaintiffs,

        -against-

QUEENS BLOSSOM CORP., 35 AVENUE
MANAGEMENT, INC., THOMAS
HUANG, ALICE HUANG, HENRY
HUANG, LINH HUANG, JOHN HUANG,
and TIFFANY HUANG,

               Defendants.

------------------------------------------------------x

**MEMORANDUM AND ORDER**
18-CV-1366 (RPK) (RER)

RACHEL P. KOVNER, United States District Judge:

      Plaintiffs Benjamin Chan, George Chan, and Suet Man ("Jenny") Chan pursue claims under the Fair Labor Standards Act ("FLSA") and New York Labor Law ("NYLL") against defendants 35 Avenue Management, Inc. ("35 Avenue Management"), Queens Blossom Corp. ("Queens Blossom"), Thomas Huang, Alice Huang, Linh Huang, and Tiffany Huang. Defendants move for summary judgment on the FLSA claims and urge the subsequent dismissal of all NYLL claims. Plaintiffs move for summary judgment only on the NYLL claims.

      Defendants' motion for summary judgment is granted as to Linh Huang's employer status under the FLSA. Plaintiffs' motion for summary judgment is granted in part as well. Plaintiffs are entitled to summary judgment on their minimum wage, overtime, and spread-of-hour claims against 35 Avenue Management under the NYLL. The motions are otherwise denied.

# BACKGROUND

The following background comes from the parties' statements of facts and attached documents, depositions, and declarations. *See* Fed. R. Civ. P. 56(c)(1)(A); Local Rule 56.1.

## A. Factual Background

### 1. The Flushing Regent Hotel

Queens Blossom holds the deed to a parcel of land at 134-32 35th Avenue in Queens, New York. *See* Recording and Endorsement, Office of the City Register at 1, 6 (Dkt. #78-1). On that land sits the Flushing Regent Hotel. *See* Pls.' Statement ¶ 5 (Dkt. #73-2); Defs.' Counterstatement ¶ 4 (Dkt. #81). The Hotel is operated by 35 Avenue Management, Inc. *See* Pls.' Statement ¶¶ 115, 128; Defs.' Statement ¶ 13 (Dkt. #75-2). Alice Huang is the president of 35 Avenue Management. *See* Alice Huang Decl. ¶ 5 (Dkt. #78). Thomas Huang is listed in bank records as the secretary of 35 Avenue Management, *see* Bank of Hope, Account Agreement (Nov. 11, 2017) (Dkt. #73-25), though defendants contest that he had any involvement with the Hotel, *see* Alice Huang Decl. ¶ 88 (Dkt. #78). Alice and Thomas Huang's daughter, Tiffany Huang, describes herself as "an assistant and bookkeeper" for 35 Avenue Management. *See* Tiffany Huang Decl. (July 17, 2020) (Dkt. #79). Their daughter-in-law, Linh Huang, stated that she did "the accounts payable" for 35 Avenue Management. Linh Huang Dep. 9 (Dkt. #73-20).

35 Avenue Management pays three kinds of employees who work at the Hotel on a regular basis: front desk workers, housekeeping employees, and fire safety directors. *See* Emily Wu Dep. 50 (Mar. 8, 2019) (Dkt. #73-16); Pls.' Statement ¶¶ 115, 128; Defs.' Counterstatement ¶¶ 115, 128. In 2002, when the Hotel was known as the Flushing International Hotel, Thomas Huang also granted plaintiff Jenny Chan "the exclusive right to conduct all leasing work related to" the Hotel, including "daily rental, multiple day occupancy agreement[s,] . . . month to month lease[s,] or

leases for longer duration" in return for commission on certain rentals. Exclusive Commission Agreement (Aug. 19, 2002) (Dkt. #78-5).

### 2. The Fire Safety Directors

According to plaintiffs, in 2004, the Exclusive Commission Agreement took effect, and Jenny Chan started to lease out the Hotel. *See* Jenny Chan Dep. 47 (Aug. 7, 2019) (Dkt. #73-10). This work primarily involved "promot[ing] the Hotel"—"spread[ing] the news and t[elling] everybody about the Flushing Hotel." *Id.* at 46:8-22.

By 2012, Jenny Chan "often visited [the Huangs'] office." *Id.* at 84:15-20. During one of these visits, Tiffany Huang told her that "they needed to hire a fire safety person." *Id.* at 84:10-14. Jenny Chan told her brother Benjamin Chan about the position, and he was hired. *See id.* at 84:7-14. He started as a fire safety director at the Hotel that year. *See* Pls.' Statement ¶ 24.

Around that time, in 2012, Thomas Huang also asked Jenny Chan if she "wanted to help them" by "becom[ing a] fire safety director because they need[ed] an extra person." Jenny Chan Dep. 82. Jenny Chan agreed, and she started working as a fire safety director at the Hotel as well. *See ibid.* She continued to lease out the hotel for commissions. *See id.* at 86:9-17.

In 2013, Jenny Chan told her brother George Chan that the Hotel was looking to hire a third fire safety director. *See* Pls.' Statement ¶ 6. He was ultimately hired as well. *See id.* ¶ 13. He started working as a fire safety director in July 2013. *See ibid.*

Plaintiffs state that for the next five years, they each worked as a fire safety director eight hours a day for seven days a week. *See id.* ¶¶ 20, 29, 47. The Hotel needed a fire safety director on the premises at all times, and there were only three fire safety directors, so plaintiffs worked consecutive eight-hour shifts. *See id.* ¶¶ 17, 36. George Chan typically worked from 3:00 a.m. until 11:00 a.m. *See id.* ¶ 16. Jenny Chan typically worked from 11:00 a.m. until 7:00 p.m. *See id.* ¶ 47. Benjamin Chan typically worked from 7:00 p.m. until 3:00 a.m. the following day. *See*

*id.* ¶ 31.  At work, plaintiffs would "make sure that all fire safety equipment and systems work[ed] correctly, . . . make sure there's a clear path to egress for all walkways and exits, . . . [and] contact the fire department."  Benjamin Chan Dep. 40 (May 17, 2019) (Dkt. #73-8).

Plaintiffs were paid in cash for this work once every two weeks.  *See* Pls.' Statement ¶¶ 12, 43.  Benjamin Chan and Jenny Chan stated that they were each paid $700, *see id.* ¶¶ 29, 43, and George Chan stated that he was paid $800, *see id.* ¶ 13.  Plaintiffs have submitted salary sheets that list Benjamin Chan and George Chan as receiving $700 in cash and $800 in cash, respectively. *See* Hotel Salary Sheets (Dkt. #73-19).  Plaintiffs have also submitted timecards for Benjamin Chan and George Chan reflecting this payment schedule from December 26, 2016 to November 12, 2017.  *See* Benjamin Chan Timecards (Dkt. #73-9); George Chan Timecards (Dkt. #73-7).

In December 2017, a group of employees at the Flushing Regent Hotel asked for a raise. *See* Pls.' Statement ¶¶ 67, 72, 90, 93.  That group included front desk workers and a housekeeper— plaintiffs who have since been dismissed from this action.  *See id.* ¶¶ 58, 70, 81, 92; *see* Emily Wu Dep. 98.  The group delegated the responsibility to make the salary request to Jenny Chan.  *See* Emily Wu Dep. 99.  Jenny Chan contacted Tiffany Huang, who told her that Thomas Huang would speak to the employees.  *See* Pls.' Statement ¶ 54.

Soon after, Thomas Huang held a meeting with these employees—but not Jenny Chan— at the front desk of the Hotel.  *See* Pls.' Statement ¶¶ 67, 72, 93.  Alice Huang was also present. *See* Emily Wu Dep. 100.  At the meeting, Thomas Huang refused the raise.  *See ibid.*  He then told the employees that they could leave if they were not satisfied with their wages.  *See id.* ¶ 67. Further, he told the employees that Jenny Chan had taken money from him.  *See* Si Wi ("David") Chen Dep. 19 (Mar. 1, 2019) (Dkt. #73-13).  He told the employees that he had fired her.  *See ibid.*

After the meeting, Thomas Huang met Jenny Chan on the street. *See* Jenny Chan Dep. 127. He told Jenny Chan that he was going to fire her and her brothers. *See id.* 128:4-8. He then told her to tell her brothers that they did not need to come back to work. *See id.* 128:19-21. Jenny Chan relayed the message. *See* Pls.' Statement ¶¶ 18, 57; George Chan Dep. 40 (May 24, 2019) (Dkt. #73-2).

According to plaintiffs, throughout their employment as fire safety directors, the manager of the Hotel was Tiffany Huang. *See* Pls.' Statement ¶¶ 39, 52. Jenny Chan stated that Thomas Huang told the employees that Tiffany Huang was the manager. *See id.* ¶ 52. Benjamin Chan and George Chan both stated that they each interviewed with Tiffany Huang, and that in the interviews she set out their hours and wages, and then offered them the job. *See id.* ¶¶ 10, 25. Once plaintiffs started working, Tiffany Huang posted their schedules, *see id.* ¶¶ 14, 30, 44, and plaintiffs would notify her if they needed to swap shifts, *see id.* ¶ 20. Each plaintiff requested a raise from Tiffany Huang, but she refused. *See* Pls.' Statement ¶¶ 19, 29, 44.

Plaintiffs stated that the ultimate "boss" of the Hotel was Thomas Huang. *See* Pls.' Statement ¶ 39. Jenny Chan stated that she would deal with Thomas Huang if there were any fire-related issues. *See id.* ¶ 53.

### 3. The Management

Defendants tell a different story. According to defendants, Jenny Chan's commission agreement not only granted her the exclusive right to lease out the Hotel; it also granted her the exclusive right to manage the Hotel. *See* Exclusive Commission Agreement (Aug. 19, 2002). As support, defendants emphasize that Jenny Chan filed a complaint in New York state court where she alleged under oath that she had an "exclusive [r]ight to operate and manage the Hotel." Verified Compl. ¶ 49 (Dkt. #75-17); Alice Huang Decl. ¶ 110 (Dkt. #78). Jenny Chan's commission agreement, defendants say, made her "responsible for the day-to-day management of

the Hotel from the time when she first started as a manager and real estate agent for the Hotel until she was terminated." Alice Huang Decl. ¶ 63 (Dkt. #78).

In this role, while "working as a licensed real estate broker," Jenny Chan "manag[ed] the Hotel." Alice Huang Decl. ¶ 49 (Dkt. #78). She "made arrangements to find, interview, and hire individuals who worked at the Hotel," including her brothers. *Id.* ¶ 66. She was solely responsible for setting wages. *See* Defs.' Statement ¶ 11; Alice Huang Decl. ¶ 46 (Dkt. #75-3). She "set the hours and days" when employees worked. Alice Huang Decl. ¶ 93 (Dkt. #78). She "tracked the hours" that they worked in "time records." *Id.* ¶¶ 91-92, 94-95. And she relayed these hours to 35 Avenue Management for payment. *See ibid.* In short, defendants deny that Jenny Chan was ever "an employee of the Hotel"—only a manager. *Id.* ¶ 69; *see* Defs.' Statement ¶ 9.

Still, defendants admit that Benjamin Chan, George Chan, and Jenny Chan all acted as fire safety directors at the Hotel, *see* Defs.' Counterstatement ¶ 36; they just deny that any ever worked 56 hours a week, *see id.* ¶ 16; Alice Huang Decl. ¶¶ 42, 85-87 (Dkt. #78). Finally, defendants represent that Jenny Chan, Benjamin Chan, and George Chan provided services "only to 35 Avenue Management Inc. and for no other defendant." Alice Huang Decl. ¶ 78. They represent that 35 Avenue Management relied on Jenny Chan's time records for payment, *see id.* ¶ 98, and that it paid its employees based on what Jenny Chan said was owed, *see* Defs.' Statement ¶ 14.

B.    **Procedural History**

Plaintiffs filed this action against defendants on March 5, 2018. *See* Compl. at 21 (Dkt. #1). The first two causes of action allege that defendants violated the Fair Labor Standards Act when they failed to pay plaintiffs (1) a minimum wage, *see* 29 U.S.C. § 206(a), and (2) overtime wages, *see* 29 U.S.C. § 207(a). *See* Compl. ¶¶ 72-88. The third, fourth, fifth, and sixth causes of action allege that defendants violated New York Labor Law when they failed to pay plaintiffs (3) a minimum wage, *see* NYLL § 652, (4) overtime wages, *see* NYLL § 652, (5) spread-of-hours

6

compensation, *see* 12 NYCRR § 146-1.6, and failed to comply with (6) notice and recordkeeping requirements, *see* NYLL §§ 195(1), (3). *See* Compl. ¶¶ 89-121. The seventh cause of action alleges that plaintiffs are entitled to the reasonable value of services performed as quantum merit. *See* Compl. ¶¶ 122-127.

Both parties have moved for summary judgment. Defendants move for summary judgment on the FLSA claims and ask that the balance of plaintiffs' claims be dismissed so that they can be brought in state court. *See* Defs.' Mem. of L. in Supp. of Defs.' Mot. for Summ. J. at 3-4 (Dkt. #75-1) (Defs.' Memo"). Plaintiffs move for summary judgment only as to liability on the NYLL causes of action. *See* Pls.' Notice of Mot. (Dkt. #73).

## STANDARD OF REVIEW

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "An issue of fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Frost v. New York City Police Dep't*, 980 F.3d 231, 242 (2d Cir. 2020) (quoting *SCR Joint Venture L.P. v. Warshawsky*, 559 F.3d 133, 137 (2d Cir. 2009)). "A fact is material if it might affect the outcome of the suit under governing law." *Ibid.* The movant bears the burden of "demonstrat[ing] the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Where "the burden of persuasion at trial would be on the non-moving party," the movant "may satisfy his burden of production" either "(1) by submitting evidence that negates an essential element of the non-moving party's claim, or (2) by demonstrating that the non-moving party's evidence is insufficient to establish an essential element of the non-moving party's claim." *Nick's Garage, Inc. v. Progressive Cas. Ins. Co.*, 875 F.3d 107, 114 (2d Cir. 2017).

In assessing the record, I consider cited "depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , admissions, [and] interrogatory

answers[.]"  Fed. R. Civ. P. 56(c)(1)(A).  I view "the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor." *Tracy v. Freshwater*, 623 F.3d 90, 95 (2d Cir. 2010).  "The same standard applies where, as here, the parties filed cross-motions for summary judgment." *Morales v. Quintel Ent. Inc.*, 249 F.3d 115, 121 (2d Cir. 2001). "[E]ach party's motion must be examined on its own merits, and in each case all reasonable inferences must be drawn against the party whose motion is under consideration." *Ibid.*

## DISCUSSION

Defendants move for summary judgment for all defendants on all FLSA claims. Defendants contend that summary judgment is appropriate because 35 Avenue Management is not an enterprise subject to the FLSA; Queens Blossom is not part of a single integrated enterprise with 35 Avenue Management; and the individual defendants do not qualify as plaintiffs' employers.  Defendants' motion is denied, except that summary judgment is granted to defendant Linh Huang.

Plaintiffs move for summary judgment for all plaintiffs on all NYLL claims.  Plaintiffs contend that summary judgment is appropriate because all defendants were plaintiffs' employers under the NYLL, and each denied plaintiffs minimum wage, overtime compensation, spread-of-hours pay, wage notices and wage statements.  Summary judgment is granted to Benjamin Chan, George Chan and Jenny Chan on their minimum wage, overtime compensation, and spread-of-hours claims, but only against 35 Avenue Management.  The motion is otherwise denied.

### I.  Defendants' motion for summary judgment is granted in part.

Plaintiffs seek to hold defendants liable for wage violations under the FLSA.  The FLSA generally obligates an employer to pay minimum and overtime wages to an employee who "is engaged in commerce or in the production of goods for commerce," or "is employed in an enterprise engaged in commerce or in the production of goods for commerce."  29 U.S.C.

§§ 206(a), 207(a). These categories are known as "individual" coverage and "enterprise" coverage, respectively. *Jacobs v. N.Y. Foundling Hosp.*, 577 F.3d 93, 96-97 (2d Cir. 2009). Although plaintiffs pleaded both forms of liability, *see* Compl. ¶¶ 75-77, they invoke only enterprise coverage in opposition to defendants' motion for summary judgment, *see* Pls.' Mem. of L. in Opp'n to Defs.' Mot. for Summ. J. at 1-3 (Dkt. #77) ("Pls.' Opp'n"). Plaintiffs' theory of liability is that they were employed by 35 Avenue Management; that 35 Avenue Management was liable as an enterprise subject to the FLSA's directives; that Queens Blossom also made up this enterprise; and that the individual defendants were employers within this enterprise.

Defendants move for summary judgment at each link of the chain. 35 Avenue Management concedes that it was plaintiffs' employer. Defendants do not dispute that 35 Avenue Management is an enterprise, but they contend that it is not subject to the FLSA's directives. Defendants contend that Queens Blossom was not part of any enterprise with 35 Avenue Management. And the individual defendants each argue that they were not employers within any relevant enterprise. Because genuine issues of material fact remain as to almost all of these disputes, defendants' motion is denied except as to Linh Huang.

### A.     35 Avenue Management is not entitled to summary judgment.

Defendant contend that 35 Avenue Management was not an enterprise subject to the FLSA's directives. Under the FLSA, an "enterprise" comprises "the related activities performed (either through unified operation or common control) by any person or persons for a common business purpose[.]" 29 U.S.C. § 203(r)(1). But an enterprise is liable for wage violations only if it was "engaged in commerce or in the production of goods for commerce." 29 U.S.C. §§ 206(a), 207(a). An enterprise is "engaged in commerce or in the production of goods for commerce" if it "(i) has employees engaged in commerce or in the production of goods for commerce, or that has employees handling, selling, or otherwise working on goods or materials that have been moved in

or produced for commerce by any person; and (ii) is an enterprise whose annual gross volume of sales made or business done is not less than $500,000 (exclusive of excise taxes at the retail level that are separately stated)." 29 U.S.C. § 203(s)(1). Defendants argue that 35 Avenue Management is entitled to summary judgment because plaintiffs have not presented sufficient evidence that 35 Avenue Management was "engaged in interstate commerce" and "had gross sales of at least $500,000." Defs.' Memo at 6.

Neither argument convinces. First, the parties have at least a genuine dispute over whether 35 Avenue Management had employees engaged in interstate commerce during the relevant period. Plaintiffs have submitted testimony from front desk workers, housekeeping employees, and fire safety directors who all worked for 35 Avenue Management to help operate Flushing Regent Hotel. *See, e.g.*, Emily Wu Dep. 7 (front desk); Xu Ben Ku Dep. 14-15 (Mar. 27, 2019) (Dkt. #73-14) (housekeeping); George Chan Dep. 14 (fire safety). That evidence creates at least a genuine dispute over whether 35 Avenue Management had "employees engaged in [interstate] commerce," 29 U.S.C. § 203(s)(1)(A)(i), because "hotels are 'enterprises having a direct and substantial relation to the interstate flow of goods and people,'" *Jiao v. Shi Ya Chen*, No. 03-CV-165, 2007 WL 4944767, at *9 (S.D.N.Y. Mar. 30, 2007) (quoting *Heart of Atlanta Motel v. United States*, 379 U.S. 241, 250 (1964)).

Second, the parties have a genuine dispute over whether 35 Avenue Management had annual gross sales of at least $500,000 during the relevant period. Plaintiffs seek to recover wages since 2012. *See* Pls.' Mem. Of L. in Supp. of Summ. J. at 4-6 (Dkt. #73-1) ("Pls.' Memo"); Pls.' Mem. Of L. in Further Supp. of Summ. J. at 4-5 (Dkt. #85) ("Pls.' Reply"). To that end, plaintiffs have submitted a two-page document that breaks out the Hotel's monthly and annual total income from July 2009 through May 2017; it states that the Hotel had a total income over $675,000 each

year from 2012 through 2016. *See* Decl. of Michael Cassel at 21-22 (Dkt. #77-2 Ex. 3). Although defendants contest the validity of the document, *see* Defs.' Reply Mem. Of Law. In Supp. of Summ. J. at 3-4 (Dkt. #86) ("Defs.' Reply"), plaintiffs have represented that this document reflects 35 Avenue Management's internal accounting about how much money the Hotel made each year, *see* Pls.' Opp'n at 7, and plaintiff Jenny Chan has testified that she received the document from defendant Tiffany Huang as defendants considered selling the Hotel, *see* Jenny Chan Dep. 81-82. That "affirmative and concrete evidence" creates a genuine dispute over whether 35 Avenue Management had annual gross sales of at least $500,000 from operating the Hotel through 2017. *See Jun Chen v. Sushi 21 NY Inc.*, No. 17-CV-6153, 2018 WL 6618174, at *3 (S.D.N.Y. Dec. 18, 2018).

Defendants respond that their federal income tax returns from 2014 to 2017 conclusively demonstrate that 35 Avenue Management did not have at least $500,000 in annual gross sales during the relevant period. *See* U.S. Corporation Income Tax Return (2014) (Dkt. #75-13) ("$419,837"); U.S. Corporation Income Tax Return (2015) (Dkt. #75-14) ("$331,004"); U.S. Corporation Income Tax Return (2016) (Dkt. #75-15) ("$277,918"); U.S. Corporation Income Tax Return (2017) (Dkt. #75-16) ("$354,687"). But "[t]he mere fact that [d]efendants have produced tax returns" reflecting income below $500,000 does not compel summary judgment. *Diaz v. Bronx PawnBroker Inc.*, No. 18-CV-7590, 2021 WL 809490, at *4 (S.D.N.Y. Mar. 2, 2021). These tax returns cannot be reconciled with the document presented by plaintiffs that purports to reflect 35 Avenue Management's internal accounting. That document indicates that 35 Avenue Management made far more than $500,000 annually. When tax returns outright "conflict with other evidence," the returns are "insufficient to support summary judgment." *Lili Shi v. DXN Mike Corp.*, No. 16-CV-5185, 2017 WL 9989894, at *2 (E.D.N.Y. Nov. 3, 2017) (quoting *Ying Shun Zhao v. Sunny*

*39 Hotel Corp.*, No. 14-CV-1847, 2015 WL 5307716, at *4 (E.D.N.Y. Sept. 10, 2015)); *see Ying Ying Dai v. ABNS NY Inc.*, No. 18-CV-5170, 2020 WL 224532, at *2 (E.D.N.Y. Jan. 15, 2020); *Junmin Shen v. No. One Fresco Tortillas, Inc.*, No. 16-CV-2015, 2018 WL 6712771, at *7 (S.D.N.Y. Nov. 26, 2018). The "weighing of [that] evidence" is best left for a factfinder at trial. *Lili Shi*, 2017 WL 9989894, at *2 (quoting *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 150 (2000)).

**B.      Queens Blossom is not entitled to summary judgment.**

Queens Blossom moves for summary judgment on the FLSA claims against it on the grounds that it did not have "gross sales or gross revenue of over $500,000" during the relevant period. *See* Defs.' Memo. at 9. In response, plaintiffs argue, among other things, that summary judgment would be inappropriate because there is a genuine issue of material fact as to whether 35 Avenue Management Inc. had a gross revenue over $500,000, and Queens Blossom and 35 Avenue Management should be treated as the same enterprise. *See* Pls.' Opp'n at 9.

Plaintiffs have argued that Queens Blossom and 35 Avenue Management should be treated as the same enterprise using cases that employ FLSA's three-part statutory test for an "enterprise." *See, e.g.*, Pl.'s Opp'n at 9 (citing *Cruz v. Rose Assocs., LLC,* 13-CV-112, 2013 WL 1387018, at *7-*8 (S.D.N.Y. Apr. 5, 2013)). Defendants have responded using cases that employ the same test. *See, e.g.*, Defs.' Reply at 7 (citing *Rosario v. Mis Hijos Deli Corp.*, No. 15-CV-6049, 2018 WL 4636822, at *6 (S.D.N.Y. Sept. 27, 2018)). Accordingly, I analyze the question using the same framework. *See* 29 U.S.C. § 203(r)(1). To determine the scope of an enterprise under that test, courts consider "three main elements": whether (i) people or entities have "related activities" (ii) performed through "unified operations or common control" (iii) for a "common business purpose." *Gordon v. Gen. Prop. Mgmt. Assocs., Inc.*, 496 F. Supp. 3d 830, 838 (S.D.N.Y. Oct. 22, 2020) (quoting *Brennan v. Arnheim & Neely, Inc.*, 410 U.S. 512, 518 (1973)).

Applying these principles, there is a genuine issue of material fact as to whether the Queens Blossom was part of the relevant enterprise that included 35 Avenue Management. First, a reasonable factfinder could conclude that the two entities had related activities. "[A]ctivities of more than one entity are related where the entities provide mutually supportive services to the substantial advantage of each entity." *Jones v. Pawar Bros. Corp.*, 434 F. Supp. 3d 14, 21 (E.D.N.Y. 2020). Plaintiffs have presented evidence that Queens Blossom and 35 Avenue Management provided mutually supportive services. Plaintiffs elicited deposition testimony that Queens Blossom at one point owned the Hotel, *see* Tiffany Huang Dep. 14-15 (Oct. 4, 2019) (Dkt. #73-18); Thomas Huang Dep. 24 (Dkt. #73-22), and the parties agree that 35 Avenue Management operated the Hotel, *see* Pls.' Statement ¶¶ 115, 128; Defs.' Statement ¶ 13; Defs.' Counterstatement ¶¶ 115, 128. Under this arrangement, Queens Blossom relied entirely on 35 Avenue Management's employees to generate revenue for the Hotel, and 35 Avenue Management relied entirely on Queens Blossom for a Hotel to operate. *See* Alice Huang Dep. 62 (Dkt. #73-21) (stating that Queens Blossom had no employees); Tiffany Huang Dep. 22 (stating that 35 Avenue Management managed just one hotel). Further, plaintiffs have submitted evidence that Queens Blossom routinely paid 35 Avenue Management thousands of dollars, which indicates that Queens Blossom may have helped facilitate 35 Avenue Management's operations. *See* Michael Cassel Decl. at 4-9 (Dkt. #77-2 Ex. 1). "Such overlap of employees" and "operational dependence" favors a finding of related activities. *Jones*, 434 F. Supp. at 22. For that reason, courts have concluded before that building owners and property management firms conduct related activities. *See, e.g.*, *Gordon*, 496 F. Supp. 3d at 838 (concluding that property management firm and residential building conducted related activities because firm "provide[d] services to the

[building] that [we]re integral to its operations, such as collecting common charges, managing the superintendent, and paying various expenses").

Second, the record reflects a genuine dispute as to whether Queens Blossom and 35 Avenue Management had "unified operations or common control." "[C]ommon control exists where the performance of the described activities [is] controlled by one person or by a number of persons, corporations, or other organizational units acting together." *Jones*, 434 F. Supp. at 22. The parties have a genuine dispute here as to whether Alice Huang and her family made up "a core group of individuals that control[led]" both entities. *Archie v. Grand Cent. P'ship, Inc.*, 997 F. Supp. 504, 526 (S.D.N.Y. 1998). Alice Huang owns Queens Blossom and 35 Management as the sole shareholder for both entities. *See* Alice Huang Decl. ¶ 7 (Dkt. #78). She has the authority to "make binding decisions" for both entities. *Archie*, 997 F. Supp. at 527; *see* Bank of Hope, Authorized Signer Information (Dkt. #73-24) (listing Alice Huang is "president" of Queens Blossom); Bank of Hope, Authorized Signer Information (Dkt. #73-25) (listing Alice Huang as "president" of 35 Avenue Management); Alice Huang Dep. 39 (stating that she would approve only "reasonable" raises for employees of 35 Avenue Management). Her family members facilitated transactions for both entities. *See* Linh Huang Dep. 9 (stating that Linh Huang did "the accounts payable" for 35 Avenue Management); Recording and Endorsement, at 3 (noting that Linh Huang was notary public to transfer deed to Queens Blossom). And both entities "operate[d] out of a shared office" a few blocks from the Hotel. *Draskovic v. Oneota Assocs., LLC*, No. 17-CV-5085, 2019 WL 783033, at *6 (E.D.N.Y. Feb. 21, 2019); *see also Archie*, 997 F. Supp at 527 (finding common control where defendants shared management and administrative services). These facts do not reflect the kind of "arm's length relationship" suitable for summary judgment. *Lihli Fashions Corp., Inc. v. NLRB*, 80 F.3d 743, 747 (2d Cir. 1996).

Third, the record reflects at least a genuine dispute as to whether Queens Blossom and 35 Avenue Management had a "common business purpose." Viewed in the light most favorable to plaintiffs, both entities sought to generate revenue by facilitating operations at the Hotel, and there was "an agency relationship pursuant to which [one defendant] was engaged to manage the operations of [a] building" owned by another." *Gordon*, 496 F. Supp. 3d at 838. Summary judgment is inappropriate under these circumstances.

### C.  Of the individual defendants, Linh Huang is entitled to summary judgment.

Plaintiffs seek to hold liable Tiffany Huang, Thomas Huang, Alice Huang, and Linh Huang for wage violations under the FLSA. The individual defendants each move for summary judgment on the grounds that they were not plaintiffs' employers. Once a plaintiff establishes enterprise coverage, "liability under the FLSA extends to any 'employer.'" *Gordon*, 496 F. Supp. 3d at 836 (quoting 29 U.S.C. § 216(b)). The FLSA defines "employer" as "any person acting directly or indirectly in the interest of an employer in relation to an employee." 29 U.S.C. § 203(d). For individuals within an enterprise, "[t]he underlying inquiry in determining 'employer' status is whether the individual possessed operational control over employees." *Tapia v. Blch 3rd Ave LLC*, 906 F.3d 58, 61 (2d Cir. 2018) (citing *Irizarry v. Catsimatidis*, 722 F.3d 99, 103 (2d Cir. 2013)). "A person exercises operational control over employees if his or her role within the company, and the decisions it entails, directly affect the nature of conditions of the employees' employment." *Ibid.* (quoting *Irizarry*, 722 F.3d at 104).

Courts assess whether an individual defendant has the requisite control on "a case-by-case basis" by reviewing "the totality of the circumstances." *Irizarry*, 722 F.3d at 104. Four factors are often relevant: whether the individual (1) "had the power to hire and fire" employees, (2) "supervised and controlled employee work schedules or conditions of employment," (3) "determined the rate and method of payment," and (4) "maintained employment records." *Ibid.*

(quoting *Carter v. Dutchess Community Coll.*, 735 F.2d 8, 12 (2d Cir. 1984)). These factors are not exclusive, *see id.* at 110, and no one factor is dispositive, *Herman v. RSR Sec. Servs. Ltd.*, 172 F.3d 132, 139 (2d Cir. 1999).

### 1. Tiffany Huang is not entitled to summary judgment.

Applying these principles, there is a genuine issue of material fact as to whether Tiffany Huang is liable as plaintiffs' employer. Plaintiffs have submitted evidence that Tiffany Huang had the power to hire employees. Benjamin Chan and George Chan both stated that they each interviewed with Tiffany Huang, where she offered them the job. *See* Pls.' Statement. ¶¶ 10, 25. Other former employees at the Flushing Regent Hotel—and former plaintiffs—say the same. *See* Rongqiang ("Andy") Chen Dep. 17, 24-25 (Feb. 20, 2019) (Dkt. #73-11); David Chen Dep. 24-26; Xu Ben Ku Dep. 12-15; Emily Wu Dep. 28-32. Such conduct reflects "the authority to hire employees." *Herman*, 172 F.3d at 140 (finding first factor met where defendant actually hired three employees); *Irizarry*, 722 F.3d at 114 (finding first factor met in part because defendant interviewed a potential employee).

Plaintiffs have also submitted evidence that Tiffany Huang controlled employee work schedules. Plaintiffs each testified that Tiffany Huang posted their work schedule. *See* Pls.' Statement ¶¶ 14, 30, 44. And they testified that they would notify Tiffany Huang if they needed to swap shifts. *See id.* ¶ 52; George Chan Dep. 51. A former housekeeping employee of the Hotel also testified that worked an extra day of the week at Tiffany Huang's request. *See* Xu Ben Ku Dep. 36. Plaintiffs have thus put forward evidence that Tiffany Huang "controlled employee work schedules." *Herman*, 172 F.3d at 140 (finding second factor met where defendant "was involved in the assignment of guards to some work locations"). Further, plaintiffs have submitted evidence that Tiffany Huang supervised their work. George Chan and Jenny Chan both referred to Tiffany Huang as their manager, *see* George Chan Dep. 79; Jenny Chan Dep. 120, and Jenny Chan stated

that she contacted Tiffany Huang for problems as small as replacing lights. *See* Jenny Chan Dep. 121. Other employees who worked at the front desk also stated that Tiffany Huang would give them instructions at work, for example, by directing them to check whether customers had parked in the appropriate spot. *See* Andy Chen Dep. 37; David Chen Dep. 33-34; Emily Wu Dep. 14, 40.

And plaintiffs have submitted evidence that Tiffany Huang determined the rate and method of payment. They have offered evidence that Tiffany Huang sometimes signed paychecks, *see* Tiffany Huang Dep. 31, which is one of the "key" indicators for this factor, *Herman*, 172 F.3d at 140 (finding third factor met where defendant "had the authority to sign paychecks throughout the relevant period"); *see Irizarry*, 722 F.3d at 115 (finding third factor met where defendant's "electronic signature appear[ed] on paychecks"). Benjamin Chan and George Chan both stated that Tiffany Huang told them what their wages would be. *See* Benjamin Chan Dep. 66; George Chan Dep. 22. Further, plaintiffs have submitted evidence that Tiffany Huang could deny raises. Each plaintiff allegedly requested a raise from Tiffany Huang, but she refused. *See* Pls.' Statement ¶¶ 19, 29, 44. As to method of payment, Benjamin Chan testified that Tiffany Huang informed him that he would be paid in cash even though he asked to be paid by check. *See* Benjamin Chan Dep. 46, 91. Lastly, although plaintiff has not identified evidence that Tiffany Huang "maintain[ed] employment records," that factor is not dispositive. *See Herman*, 172 F.3d at 140.

On this record, with evidence that Tiffany Huang hired employees, set work schedules, supervised work, and determined the rate and method of payment, a reasonable factfinder could conclude that she was plaintiffs' employer. *See Irizarry*, 722 F.3d at 116 (concluding defendant was employer where defendant satisfied the first and third *Carter* factors); *Bravo v. Rodriguez*, No. 18-CV-5807, 2020 WL 4586391, at *2 (E.D.N.Y. Aug. 10, 2020) (concluding that defendant

was employer where the "first three [*Carter*] factors establish[ed] that defendant had the power to exercise control over plaintiffs' employment").

### 2. Thomas Huang is not entitled to summary judgment.

There is also a genuine issue of material fact as to whether Thomas Huang is liable as plaintiffs' employer. Plaintiffs have submitted evidence that Thomas Huang had the power to hire and fire employees. Jenny Chan stated that started working as a fire safety director because Thomas Huang asked her to do so. *See* Jenny Chan Dep. 82. She and George Chan also stated that Thomas Huang fired them. *See id.* 128; George Chan Dep. 40. Other former front desk and housekeeping employees at the Hotel have also stated that Thomas Huang fired the Chans. *See* Andy Chen Dep. 79, 89; David Chen Dep. 19; Xu Ben Ku Dep. 62, 65; Emily Wu Dep. 38.

Plaintiffs have also submitted evidence that Thomas Huang supervised conditions of employment. Employees who worked at the front desk stated that Thomas Huang gave them instructions about how to do their work—telling them that they needed to purchase uniforms, *see* Andy Chen Dep. 38, 61, clean areas of the Hotel, *see* David Chen Dep. 46, waive fees for certain guests, *see id.* at 46-47, and check the garage for cars parked incorrectly, *see* Emily Wu Dep. 60. A former housekeeping employee further stated that Thomas Huang inspected the rooms after she cleaned them. *See* Xu Ben Ku Dep. 27. This conduct would at a minimum reflect some limited "exercise of operational control," and may reflect control "on the day-to-day level of a manager." *Irizarry*, 722 F.3d at 113, 115; *see Morales v. Gourmet Heaven, Inc.*, No. 14-CV-1333, 2016 WL 6996976, at *5 (D. Conn. Nov. 29, 2016) (concluding that defendant was employer where he "managed the daily affairs, such as directing employees how to arrange flowers and produce in the front of the store").

Lastly, plaintiffs have submitted evidence that Thomas Huang helped determine the rate of pay. Several former employees at the Hotel testified that they met with Thomas Huang to request

a raise. *See* Andy Chen Dep. 85; David Chen Dep. 17; Xu Ben Ku Dep. 64; Emily Wu Dep. 96. And they each stated that Thomas Huang denied the request in a meeting at the front desk. *See* Andy Chen Dep. 85; David Chen Dep. 17; Xu Ben Ku Dep. 64. As for method of pay, Jenny Chan stated that, for her work as a real estate agent, Thomas Huang decided to switch her commission from cash to check. Jenny Chan Dep. 52-53. There is no evidence that Thomas Huang maintained employment records, but again, there remains a genuine dispute even in the absence of this factor. *See Herman*, 172 F.3d at 140. Summary judgment is denied here as well.

### 3. Alice Huang is not entitled to summary judgment.

In addition, there is at least a genuine issue of material fact as to whether Alice Huang is liable as plaintiffs' employer. Plaintiffs have not submitted evidence that Alice Huang alone made hiring and firing decisions. But there is a dispute as to whether Alice Huang "played an important role in decision[s] to" hire and fire employees because plaintiffs have submitted evidence that Alice Huang and Thomas Huang made these decisions jointly. *See Graziado v. Culinary Inst. of Am.*, 817 F.3d 415, 423 (2d Cir. 2016) (concluding that defendant was FMLA employer under same test when he participated in joint decision to terminate employee). One former employee at the front desk described Thomas Huang and Alice Huang as "both the boss." David Chen Dep. 14. Another front desk worker stated that they made decisions together. *See* Andy Chen Dep. 65. And the two were always together at the Hotel, including for the meetings where Thomas Huang communicated that he had fired plaintiffs. *See* Andy Chen Dep. 65.

What's more, there is a dispute as to whether Alice Huang supervised plaintiffs' conditions of employment. As sole owner and president of 35 Avenue Management Inc., Alice Huang unquestionably "had functional control over the enterprise as a whole." *Alvarado v. GC Dealer Servs. Inc.*, No. 18-CV-2915, --- F.3d. ----, 2021 WL 66541, at *24 (E.D.N.Y. Jan. 6, 2021). Although those titles alone are not enough to reflect employer status, former Hotel employees said

that Alice Huang, like Thomas Huang, told them how to do their job, directed them to purchase uniforms, and inspected rooms. *See* Xu Ben Ku Dep. 28; Andy Chen Dep. 61. This testimony, if credited, shows that Alice Huang "directed the employees at the Hotel when she was at the Hotel." Pls.' Memo. at 16. Indeed, in her deposition, Alice Huang specifically agreed that she was Jenny Chan's "boss when [Jenny] worked" at the Hotel. Alice Huang Dep. 40.

Further, plaintiffs have submitted evidence that Alice Huang determined plaintiffs' rate and method of pay. In general, records reflect that Alice Huang had "overall financial control" of 35 Avenue Management, Inc., including "possess[ing] financial control over . . . bank accounts." *Alvarado*, 2021 WL 66541, at *24. Alice Huang also stated that she signed checks for Hotel employees. *See* Alice Huang Dep. 44, 78; *Herman*, 172 F.3d at 140. Finally, she testified that she had had the power to approve raises without consulting anyone else. *See* Alice Huang Dep. 39-40. Linh Huang likewise stated that Alice Huang had the ultimate authority to decide how much each employee would earn. *See* Linh Huang Dep. 24. As with the other defendants, there is no evidence that Alice Huang maintained employment records. But summary judgment to Alice Huang is not appropriate under these circumstances.

### 4. Linh Huang is entitled to summary judgment.

On this record, however, a reasonable factfinder could not conclude that Linh Huang was plaintiffs' employer. At most, plaintiffs have submitted evidence that Linh Huang helped determine the rate and method of plaintiffs' pay. *See* Tiffany Huang Dep. 16, 57. But that single factor "is not dispositive." *Irizarry*, 722 F.3d at 115. In the absence of any additional evidence suggesting Linh Huang had operational control over employees, Linh Huang is entitled to summary judgment on all FLSA claims.

## II. Plaintiffs' motion for summary judgment is granted in part.

All plaintiffs seek summary judgment on all NYLL claims. In doing so, plaintiffs contend that the record shows that all defendants are liable as employers under the NYLL. And they contend that that the record shows that defendants failed to pay plaintiffs (i) a minimum wage, *see* NYLL § 652, (ii) overtime wages, *see* NYLL § 652, and (iii) spread-of-hours compensation, *see* 12 NYCRR § 146-1.6. Plaintiffs also contend that the record shows that defendants failed to comply with notice and recordkeeping requirements, *see* NYLL §§ 195(1), (3).

Plaintiffs' motion is granted in part. The undisputed evidence shows that 35 Avenue Management was plaintiffs' employer under the NYLL, and that Benjamin Chan, George Chan, and Jenny Chan are entitled to summary judgment against 35 Avenue Management, Inc., on their minimum wage, overtime, and spread-of-pay claims. The motion is denied in all other respects.

### A. 35 Avenue Management is the only defendant that is indisputably plaintiffs' employer under the NYLL.

Under the NYLL, an "'[e]mployer' includes any person, corporation, limited liability company, or association employing any individual in any occupation, industry, trade, business or service." NYLL § 190(3). Although the New York Court of Appeals has not settled whether "the tests for 'employer' status are the same under the FLSA and the NYLL," *Irizarry*, 722 F.3d at 117, district courts in the Second Circuit "have interpreted the definition of 'employer' under the New York Labor Law coextensively with the definition by the FLSA." *Napoli v. 243 Glen Cove Ave. Grimaldi, Inc.*, 397 F. Supp. 3d 249, 263 (E.D.N.Y. 2019).

It is undisputed that 35 Avenue Management was plaintiffs' employer under the NYLL. Defendants agree that 35 Avenue Management employed plaintiffs; they only dispute that 35 Avenue Management had a nexus with interstate commerce and made $500,000 in annual gross sales. *See* Defs.' Memo at 6. Because New York Labor Law "does not require a plaintiff to show

either a nexus with interstate commerce or that the employer has any minimum amount of sales,"

*Vazquez v. Wally's Deli & Grocery Corp.*, 482 F. Supp. 3d 178, 185 (S.D.N.Y. 2020), there is no

genuine dispute as to whether 35 Avenue Management was plaintiffs' employer under the NYLL.

But as previously explained, disputes remain as to the other defendants. With respect to

Queens Blossom, there is a genuine dispute as to whether 35 Avenue Management and Queens

Blossom operated as a single enterprise. *See Brennan*, 410 U.S. at 518. Defendants dispute that

the two entities provided "mutually supportive services" in the sense necessary to treat the entities

as a single enterprise. *Jones*, 434 F. Supp. at 21-22. For example, defendants have stated that

Queens Blossom did not in fact own the Flushing Regent Hotel; it just owned the parcel of land

on which the Hotel sat. *See* Alice Huang Dep. 59; Alice Huang Decl. ¶¶ 10, 60-61; Recording and

Endorsement, Office of the City Register at 1, 6. If true, Queens Blossom and 35 Avenue

Management may have had a far more attenuated landlord-tenant relationship. *See Geraci v. Rest.*

*at Apple Greens, Inc.*, No. 16-CV-1385, 2019 WL 1386318, at *14 (N.D.N.Y. Mar. 27, 2019)

(finding "an arm's-length relationship between the two entities" despite the fact that one was

another's "landlord"). Further, there remains significant uncertainty about payments made from

Queens Blossom to 35 Avenue Management. *See* Defs.' Reply at 7 (representing that bank records

reflected "income and expenses relate[d] to the lease terms"). If defendants prevail, a reasonable

factfinder might well conclude that Queens Blossom was not plaintiffs' employer under the NYLL.

Likewise, there are genuine disputes as to whether the individual defendants were

plaintiffs' employers. Those defendants deny that Thomas Huang fired plaintiffs or had any role

in managing the Hotel. *See* Thomas Huang Dep. 83; *see also* Linh Huang Dep. 42 ("He doesn't

have a role at the [H]otel."). And the undisputed evidence reflects only that Tiffany Huang and

Alice Huang helped determine the rate and method of pay for employees. Although they each

conceded that they signed checks and could veto a raise, *see* Tiffany Huang Dep. 53, 57, 59; Alice Huang Dep. 39-40, the power to determine the rate and method of pay is not dispositive of employer status, *see Irizarry*, 722 F.3d at 115, and these defendants otherwise declared that they had no relevant role in managing employees, *see* Tiffany Huang Dep. 56 (stating that she had no involvement with the Hotel beyond collecting money and signing checks); Alice Huang Dep. 26 (stating that she was not involved in management). Lastly, as previously explained, Linh Huang was not an employer even viewing the record in the light most favorable to plaintiffs. On this record, a reasonable factfinder could conclude that none of the individual defendants were plaintiffs' employers.

Accordingly, on this summary judgment record, 35 Avenue Management is the only defendant that can be said to be plaintiffs' employer under the NYLL as a matter of law.

### B.  Jenny Chan is not exempt under the NYLL.

Jenny Chan moves for summary judgment against 35 Avenue Management on her NYLL claims. One of the defendants avers that Jenny Chan "was exempt under the New York Labor Law" as "an executive and manager of the Hotel operated by Defendant 35 Avenue Management, Inc." Alice Huang Decl. ¶ 30; Defs.' Mem. of L. in Opp'n to Pls.' Mot. for Partial Summ. J. at 9 (Dkt. #80). That argument is waived because it is "adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation." *United States v. Botti*, 711 F.3d 299, 313 (2d Cir. 2013). Defendants' opposition states only that the record "completely contradicts the claims and allegations that [Jenny Chan] was an employee of the Hotel." Defs.' Opp'n at 1-2.

In any event, "[a]n employer bears the burden of proving that its employees fall within an exempted category" like the executive exemption. *Ramos v. Baldor Speciality Foods, Inc.*, 687 F.3d 554, 558 (2d Cir. 2012), and defendants have not identified adequate evidence that the exemption applies. Under the NYLL, an "employee" does not "include any individual who is

employed or permitted to work . . . in a bona fide, executive, administrative, or professional

capacity" NYLL § 651(5)(c), but an individual works in a "bona fide executive" capacity only if:

> (1) his "primary duty consists of the management of the enterprise in which such individual is employed";
> (2) he "customarily and regularly directs the work of two or more other employees therein";
> (3) he "has the authority to hire or fire other employees or whose suggestions and recommendations as to . . . change of status of other employees will be given particular weight";
> (4) he "customarily and regularly exercise[s] discretionary powers"; and
> (5) he "is paid for his services a salary . . . not less than" a listed amount.

*See* 12 NYCRR 142-214(4)(i). Defendants have not presented evidence that Jenny Chan was paid

a salary above the listed amount, and Jenny Chan has testified that she was paid a salary of $350

a week, which is far below the regulatory threshold for the exemption. *See* Jenny Chan Dep. 94.

### C. Benjamin Chan, George Chan, and Jenny Chan are entitled to summary judgment against 35 Avenue Management, Inc. on their NYLL claims.

#### 1. Minimum Wage Claims

Plaintiffs Benjamin Chan and Jenny Chan are entitled to summary judgment on their claims

that 35 Avenue Management violated NYLL § 652 by not paying them minimum wage in 2016

and 2017. *See* Pls.' Memo. at 24. Under NYLL § 652(1), "employers must pay employees at least

minimum wage." *Ying Ying Dai*, 2020 WL 5820130, at *6. For 2016, the minimum wage under

NYLL was $9.00 an hour, and for 2017, the minimum wage under NYLL for an employer in New

York City was at least $10.50 per hour. NYLL § 652; *see* 12 NYCRR 146-1.2(a)(1)(i). An

employee's "regular hourly rate of pay" is "calculated by dividing the employee's total weekly

earnings . . . by the lesser of 40 hours or the actual number of hours worked by that employee

during the work week." 12 NYCRR 146-3.5. Benjamin Chan presented records of payment that

reflect that he received $350 a week. *See* Hotel Salary Sheets (Dkt. #73-19); Benjamin Chan

Timecards (Dkt. #73-9). Jenny Chan also testified that she received $350 a week. *See* Jenny Chan.

Dep. 94, 112, 142. Defendants do not present any evidence to contradict that those employees received $350 a week for their work as fire safety directors and worked at least 40 hours a week. That payment schedule reflects a regular hourly rate of $8.75 per hour, which was less than the minimum wage in 2016 and 2017.

Likewise, plaintiff George Chan is entitled to summary judgment on his claim that 35 Avenue Management violated NYLL § 652 by not paying him a minimum wage in 2017. George Chan presented records of payment that reflect that he received $400 a week. *See* Hotel Salary Sheets; George Chan Timecards (Dkt. #73-7). George Chan also presented evidence that he worked at least 40 hours a week. [citation]. Defendants have not presented any evidence to contradict these assertions. That payment schedule reflects a regular hourly rate of $10.00 per hour, which was less than the minimum wage in 2017.

### 2. Overtime Claims

New York Labor Law generally requires an employer to "pay an employee for overtime at a wage rate of one and one-half times the employee's regular rate." 12 NYCRR § 142-2.2. To establish an overtime claim, "a plaintiff must prove that he performed work for which he was not properly compensated, and that the employer had actual or constructive knowledge of that work." *Kuebel v. Black & Decker Inc.*, 653 F.3d 352, 361 (2d Cir. 2011) (citing *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 686-87 (1946)) (FLSA); *Nakahata v. New York-Presbyterian Healthcare Sys., Inc.*, 723 F.3d 192, 200 (2d Cir. 2013) (NYLL). The NYLL places the responsibility on an employer to maintain time records. *See* NYLL §§ 195(4), 196-a,. Accordingly, "if an employer's records are inaccurate or inadequate, an employee need only present 'sufficient evidence to show the amount and extent of [the uncompensated work] as a matter of just and reasonable inference.'" *Kuebel*, 643 F.3d at 362 (quoting *Anderson*, 328 U.S. at 687).

"The employee's burden in this regard is not high." *Ibid.* "It is well settled . . . that it is possible for a plaintiff to meet this burden through estimates based on his own recollection." *Ibid.* "In the absence of employer records, the employee's testimony assumes a rebuttable presumption of accuracy." *Garcia v. Vill. Red Rest. Corp.*, 15-CV-6292, 2017 WL 3493148, at *1 (S.D.N.Y. Aug. 14. 2017). Once the employee has testified to uncompensated hours, "[t]he burden then shifts to the employer to come forward with evidence of the precise amount of work performed or with evidence to negative the reasonableness of the inference to be drawn from the employee's evidence." *Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1047 (2016). "If the employer fails to produce such evidence, the court may then award damages to the employee." *Shiqiu Chen v. H.B. Rest. Grp., Inc.*, No. 16-CV-2005, 2020 WL 115279, at *10 (S.D.N.Y. Jan. 9, 2020).

The parties do not meaningfully dispute that the employer records here are inadequate. Rather, defendants simply suggest that the blame for any inadequate records rests with plaintiff Jenny Chan. But an employer's duty "to maintain accurate records of its employees' hours is non-delegable." *Kuebel*, 643 F.3d at 363. Accordingly, an employee may demonstrate hours by recollection even where he was "required to submit his own timesheets." *Ibid.*

Plaintiffs have each testified that they worked 56 hours a week. *See* Benjamin Chan Dep. 41-42; George Chan Dep. 49-51. Benjamin Chan testified that he typically worked from 7:00 p.m. until 3:00 a.m. the following day. *See* 44-45. George Chan testified that he typically worked from 3:00 a.m. until 11:00 a.m. *See* George Chan Dep. 24, 56-57. Jenny Chan testified that she typically worked from 11:00 a.m. until 7 p.m. *See* Jenny Chan Dep. 98.

This work schedule, they say, reflected the fact that there were only three fire safety directors at the Hotel, but the Hotel needed a fire safety director present on the premises at all times, so they each had to work eight-hour shifts seven days a week. *See* George Chan Dep. at

24-25.  Such testimony is sufficient to demonstrate plaintiffs' hours "as a matter of just and reasonable inference," thereby shifting the burden to defendants.  *Kuebel*, 643 F.3d at 362.

Defendants, lacking adequate records, have not come forward with evidence establishing the "precise amount of work performed."  *Tyson Foods*, 136 S. Ct. at 1047.  Nor have defendants submitted evidence the negates the inference that plaintiffs' hours were what they say they were.  Defendants argue that it is not reasonable to think that each plaintiff "worked for 56 hours each week for 52 weeks per year for several years."  Alice Huang Decl. ¶ 56 (Dkt. #78).  But defendants admit that they needed "a fire safety director at the Hotel at all times," *id.* ¶ 57, and that the three plaintiffs acted as fire safety directors, *see* Defs.' Counterstatement ¶ 36.  Further, defendants have not identified any other fire safety directors.  It is thus reasonable to think plaintiffs' schedule accurate, even if "the result may only be approximate."  *Gonzalez v. Masters Health Food Serv., Inc.*, No. 14-CV-7603, 2017 WL 3835960, at *16 (S.D.N.Y. July 27, 2017).

As to Benjamin Chan, defendants also argue that he could not have worked plaintiffs' proposed schedule because while he "claim[ed] to have been working at the Hotel, he was also working full time at the Trump International Hotel."  Alice Huang Decl. ¶ 18; *see* Benjamin Chan Earnings Statements (Dkt. #78-2).  But these work schedules were entirely consistent: Benjamin Chan explained that he worked at the Trump International Hotel from 9:00 a.m. to 5:00 p.m. five days a week.  *See* Benjamin Chan Dep. 60.  Plaintiffs' proffered schedule has Benjamin Chan starting at the Flushing Regent Hotel at 7:00 p.m. and ending at 3:00 a.m. the next day.  *See* Pls.' Statement ¶ 16.  Nor is the volume of work so unsustainable as to make this testimony unreliable. *See McFarlane v. Harry's Nurses Registry*, No. 17-CV-6350, 2020 WL 1643781, at *8 (E.D.N.Y. Apr. 2, 2020) (permitting plaintiff to rely on recollection that he worked 96 hours).  Summary judgment to Benjamin, George, and Jenny Chan is appropriate here as well.

### 3.    Spread-of-Hours Pay

Under the New York Labor Law, an employer must pay "one hour's pay at the basic minimum hourly wage rate, in addition to the minimum wage required . . . for any day in which . . . the spread of hours exceeds 10 hours." 12 NYCRR § 142-2.4. New York law defines "[s]pread of hours" as "the interval between the beginning and end of an employee's workday." *Id.* § 142-3.16. Benjamin Chan testified that he sometimes worked up to fifteen hours, *see* Benjamin Chan Dep. 42-43, or even longer shifts on the weekends, *see id.* at 45. Jenny Chan testified that she sometimes spent twelve hours working. *See* Jenny Chan Dep. 98-99. Additionally, she testified that Benjamin Chan and George Chan sometimes pulled a double shift to cover for her. *See id.* at 98. And once again, defendants have not provided rebuttal evidence to challenge the reasonableness of this testimony. Accordingly, plaintiffs are entitled to summary judgment on their claim that they were not paid appropriate compensation on days where they worked a spread of hours that exceeded ten hours.

### 4.    Initial and Annual Wage Notices

Plaintiffs are not entitled to summary judgment on their claims that 35 Avenue Management Inc. failed to give wage notice laws at the time of hiring or annually thereafter. Section 195(1) of the New York Labor Law obligates an employer to give a notice to an employee at the time of hiring. *See* NYLL § 195(1). That notice must include, among other things, "the rate or rates of pay and basis thereof," information as to whether pay will be "by the hour, shift, day, week, salary, piece, commission, or other," "allowances," "wage supplements," "the name of the employer," and "the telephone number of the employer." *Ibid.* The notice must also "state the regular hourly rate and overtime rate of pay" for "employees who are not exempt from overtime compensation." *Ibid.* Further, the employer must "obtain from the employee a signed and dated

written acknowledgment, in English and in the primary language of the employee, of receipt of this notice, which the employer shall preserve and maintain for six years." *Ibid.*

"From April 9, 2011 until February 26, 2015, the statute also required employers to provide annual notices." *Ying Ying Dai,* 2020 WL 5820130, at *9. While there is a "private right of action for employees to recover damages for an employer's failure to provide proper notices" at the time of hiring to employees hired on or after April 9, 2011, there is no right of action for employees hired before that date. *Ibid.* Further, "employees may not bring a claim based on the annual wage notices" because the law "provides no right to damages" for the failure to provide them. *Ibid.*

Benjamin Chan is not entitled to summary judgment under NYLL § 195(1) because there is a genuine dispute as to when he was hired to work as a fire safety director for 35 Avenue Management. It is undisputed that Benjamin Chan was hired to work at the front desk of the Hotel in 2009. *See* Benjamin Chan Dep. 8. He also stated that he "took time off in 2010." *Id.* at 20. Beyond that, he stated that he eventually started working as a fire safety director at the Hotel. *Id.* at 38. But it is unclear whether he had to be rehired or merely changed positions. And it is unclear whether he started working again in 2010 or 2012, because he alternates between both dates in his deposition. *See* Benjamin Chan Dep. 38 ("2010"); *id.* at 18 ("2012"). This places Benjamin Chan on either side of the line of the private cause of action. Plaintiffs respond that he is still entitled to damages for defendants' failure to give annual wage notices. *See* Pls.' Reply at 5. But as this provision has no private right of action either, summary judgment is denied.

In any event, plaintiffs have not submitted any evidence whatsoever that defendants failed to give them initial or annual wage notices. No remaining plaintiff testified to this fact in their deposition, and they did not submit a declaration stating that they never received this notice. Plaintiffs' Rule 56.1 Statement cites to no evidence of a failure to give notice at the time of hiring.

And Alice Huang declares that "it is [her] understanding" that they did receive the notices. *See* Alice Huang Decl. ¶ 73. Accordingly, summary judgment on this claim is denied.

### 5. Wage Statements

Section 195(3) of the New York Labor Law obligates an employer to "furnish each employee with a statement with every payment of wages" that lists information such as "the dates of work covered by that payment of wages"; the "name of [the] employee"; the "name of [the] employer"; the "rate or rates of pay and basis thereof"; whether pay was "by the hour, shift, day, week, salary piece, commission, or other"; "gross wages"; "deductions"; and "allowances." NYLL § 195(3). That statement must also "include the overtime rate or rates of pay" for "employees who are not exempt from overtime compensation," among other information. *Ibid.*

Plaintiffs are not entitled to summary judgment on their claims under Section 195(3) because they have not submitted evidence that, if credited, would establish a violation of this provision. Plaintiffs rely on evidence that they were paid in cash. *See* Pls.' Memo at 25. But the fact that employees were paid in cash, without more, is not sufficient to prove a violation of Section 195(3), because the provision is indifferent to method of payment. The only question is whether plaintiffs received wage statements, and plaintiffs have not submitted evidence that they did not. Moreover, Alice Huang declares that she understands that Jenny Chan provided wage statements. *See* Alice Huang Decl. ¶ 73. Summary judgment is not appropriate under these circumstances.

## CONCLUSION

Defendants' motion for summary judgment is granted in part.  Linh Huang is entitled to summary judgment on plaintiffs' FLSA claims.  Plaintiffs' motion for summary judgment is also granted in part.  Benjamin Chan, George Chan and Jenny Chan are entitled to summary judgment on their minimum wage, overtime compensation, and spread-of-hours claims under the NYLL against 35 Avenue Management.   Both motions are denied in all other respects.

SO ORDERED.

    */s/  Rachel Kovner*
RACHEL P. KOVNER
United States District Judge

Dated:     July 7, 2021
           Brooklyn, New York